IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ROBERT NASELLA,                    §
                                   §
        Plaintiff,                 §
                                   §
v.                                 §        CIVIL NO. H-07-1353
                                   §
MICHAEL J. ASTRUE,                 §
Commissioner of Social             §
Security Administration,           §
                                   §
        Defendant.                 §

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] are Plaintiff's Motion for Summary Judgment (Docket Entry No. 20), Defendant's Motion for Summary Judgment (Docket Entry Nos. 13, 14), and the responses filed thereto.  The court has considered the motions, all relevant filings, and the applicable law.  For the reasons set forth below, the court **RECOMMENDS** that Plaintiff's motion be **DENIED** and Defendant's motion be **GRANTED**.

## I.  Case Background

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration ("Commissioner") regarding Plaintiff's claim for disability benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 1382.

## A.  Factual History

---

[1]      This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Docket Entry No. 10.

Plaintiff was born on November 26, 1955.[2]  On the date of the administrative hearing in this case, Plaintiff was 50 years old, 5 feet, 11 inches tall, and weighed 300 pounds.[3]  Plaintiff has a high school diploma and training as a manicurist.[4]

Plaintiff's medical records show a history of seizure disorder and that he underwent a craniotomy in 1990 to remove a brain tumor.[5]  The procedure was a success and ultimately suppressed Plaintiff's seizure disorder.  In September of 2001, Plaintiff's physician, Arthur P. Safran, reported that Plaintiff had been seizure free for over six years.[6]  As of December of 2002, Plaintiff was given "no restrictions on heavy lifting, driving, working alone, or working regular or protracted hours."[7]  Plaintiff remained free of seizures and weakness during follow-up visits with Dr. Safran until 2004.

On two occasions in April of 2004, Plaintiff was admitted to the hospital for seizure disorder.[8]  Later that same month, Plaintiff met with Dr. Safran and had his yearly MRI (Magnetic

---

[2]    Transcript of the Administrative Proceedings ("Tr.") 18.

[3]    Id. at 418-19.

[4]    Id. at 419.

[5]    Id. at 244, 424.

[6]    Id. at 248.

[7]    Id. at 247.

[8]    Id. at 111, 114.

Resonance   Imaging).[9]   Plaintiff's   MRI   indicated   stable abnormalities in the right cerebral hemisphere (unchanged from the previous brain MRI) and a lesion that was noted as unchanged since 1997.[10]

On June 18, 2004, Plaintiff went to the hospital complaining of back pain.[11] He was diagnosed with severe arthritis in his lower thoracic spine and was instructed to take Tylenol.[12]  A radiology report on Plaintiff's lower spine indicated "prominent hypertrophic changes . . . present at T11-12 and T12-L1" that were "probably related to old trama."[13]  Plaintiff made three subsequent doctors visits complaining of back pain.  On September 8, 2004, Plaintiff was diagnosed with lumbar strain and prescribed one month of Vioxx.[14]  On December 12, 2004, another doctor, Dr. P. S. Rowley, diagnosed Plaintiff with lumbar strain.[15]  No other medical issues were noted on either of these visits.  Plaintiff was observed to have "good strength in all muscle groups of his lower extremities, full range of motion of his hips, the ability to heel and toe walk,

---

[9]   Id. at 235-39.

[10]   Id.

[11]   Id. at 97.

[12]   Id. at 99, 101.

[13]   Id. at 104.

[14]   Id. at 217.

[15]   Id. at 218.

and the ability to laterally bend without discomfort.[16]  Dr. Rowley made note that Plaintiff's allegations were "not fully supported."[17]

On January 3, 2005, Plaintiff saw Dr. Frank H. Gregg for back and knee pain.[18]  Dr. Gregg noted that Plaintiff had some external limitations, including the ability to occasionally lift or carry fifty pounds, frequently lift twenty-five pounds, stand or walk for six hours in an eight hour workday, and sit less than six hours in an eight hour workday.[19]  Plaintiff was also noted to have frequent balance problems, occasional climbing, stooping, kneeling, crouching, and crawling limitations, and restrictions on climbing ladders, ropes, or scaffolds.[20]  Dr. Gregg indicated that Plaintiff had no history of significant back problems, no paraspinal spasms, good strength in all muscle groups, full range of motion of his hips, and could heel to toe walk.[21]  Dr. Gregg noted a lack of support for Plaintiff's symptoms and allegations and a lack of medical evidence to support Plaintiff's diagnosis of degenerative joint disease.[22]

Two weeks later, on January 14, 2005, Plaintiff was taken to

---

[16]   Id. at 217, 225.

[17]   Id. at 223.

[18]   Id. at 226.

[19]   Id. at 227.

[20]   Id. at 228.

[21]   Id.

[22]   Id. at 228, 231.

4

the hospital for a seizure which had resulted in an automobile accident.[23]   Plaintiff informed the doctor that he had not had a seizure in ten years and, as a result, had discontinued taking Depakote, a seizure medication.[24]   At the time of his accident, Plaintiff had not taken Depakote for six months.[25]   The doctor recommended that Plaintiff begin taking the medication again, avoid driving for six months, and avoid any risky behavior or operation of heavy machinery.[26]   Plaintiff's electroencephalogram (EEG) was reported abnormal, but of the nature of those seen in patients who have had brain surgery.[27]

Plaintiff was hospitalized again on January 30 and February 19, 2005, for seizures.[28]   It is unclear from the medical records whether Plaintiff had been taking Depakote at the time of these seizures, but at the administrative hearing, Plaintiff explained that he had stopped taking the medication altogether in 2005.[29] Regardless, his doctors had prescribed the medication during both

---

[23]     Id. at 317.

[24]     Id. at 326.

[25]     Id. at 324.

[26]     Id. at 333.

[27]     Id. at 337.

[28]     Id. at 277, 297.   Plaintiff went to the hospital a number of times in 2004 and 2005 for seizure disorder.   However, at the administrative hearing, and on forms submitted to the Social Security Administration, Plaintiff stated that he had experienced only two seizures since he had quit taking Depakote.   Id. at 77, 438.

[29]     Id. at 437.

of these hospital visits.[30]

**B.    <u>Procedural History</u>**

Plaintiff filed for disability benefits on October 28, 2004, claiming a disability beginning on September 1, 2001, due to pain in his right knee, hip, shoulder, and lower back.[31]   Plaintiff stated in his application that degenerative arthritis and the corresponding pain limited his ability to do work.[32]   Plaintiff's request was denied on December 8, 2004, and again on reconsideration on January 4, 2005.   After the denial on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").[33]   Plaintiff, Keith Baines (a friend of Plaintiff), and Byron Pettingill (a vocational expert) testified at a hearing held on July 26, 2006.[34]

Mr. Baines testified to behavioral changes he observed in Plaintiff following his brain surgery in 1990.[35]   He stated that, prior to the surgery, Plaintiff lived a very "normal lifestyle," but after surgery he had difficulty concentrating and became short-

---

[30]    <u>Id.</u>

[31]    <u>Id.</u> at 42, 68.

[32]    <u>Id.</u> at 87-88.

[33]    <u>Id.</u> at 32.

[34]    <u>Id.</u> at 416.

[35]    <u>Id.</u> at 426.

tempered.[36]   Mr. Baines testified that Plaintiff could properly follow instructions, but would likely not be able to do multiple tasks at the same time.[37]   He stated that Plaintiff was uncomfortable driving.[38] He also described Plaintiff's personality as jovial and indicated that Plaintiff got along well with others.[39]

Plaintiff testified that, since 1986, he worked fifty-one jobs, several after September 1, 2001 (the alleged date of disability).[40] Most of his jobs lasted only a short time: one day, two days, sometimes a week, and rarely over three months.[41] Since 2001, Plaintiff had not worked a job longer than three months.[42] He has worked at a cheese factory, as technician for Bose Corporation, as greeter (sales attendant) at Wal-Mart, as an electronics assembler, and as a numerator for the census bureau.[43] His most recent job was in December of 2005 when he worked as a teacher's aide for one week.[44]   Plaintiff explained that he would

---

[36]    Id. at 427.   In contrast to Mr. Baines's testimony, Plaintiff maintains that he is no more short-tempered than a "normal amount." Id. at 433.

[37]    Id. at 430.

[38]    Id. at 429.

[39]    Id. at 430.

[40]    Id. at 433.

[41]    Id.

[42]    Id. at 420.

[43]    Id. at 419-21.

[44]    Id. at 419-420.

have kept his job as a teacher's aide if it had not been for a seizure and resulting automobile accident that happened on his way to work.[45]

Plaintiff testified that he had taken Depakote for his seizure disorder for over fifteen years, but at the time of the accident, he had not taken it for six months because he felt that he no longer needed it.[46]  He stated that it made him tired and destroyed his "mind process."[47]   Plaintiff admitted that doctors had instructed him to continue the medication and acknowledged having two seizures since he stopped taking Depakote.[48]

Plaintiff informed the ALJ that his arthritis was the primary reason he was unable to work a job requiring eight hours a day, five days a week.[49]  He testified that he experienced arthritis in the lower portion of his back and in his hip, shoulder and fingers.[50]  He reported that sometimes he was unable to close his fingers.[51]

The vocational expert ("VE") testified that Plaintiff's

---

[45]    Id. at 436.  Plaintiff's job as a teacher's aide was the only job on which Plaintiff had a seizure.  Id.

[46]    Id.

[47]    Id.

[48]    Id. at 436, 438.

[49]    Id. at 439.

[50]    Id.

[51]    Id.

previous job as a sales attendant constituted a very basic, unskilled, one-step tasking position.[52] The VE stated that a job as a sales attendant would not involve the risks that an individual suffering from seizures, or even a history of seizures, would be required to avoid.[53] The VE also testified that, if Plaintiff's seizure condition were severe enough to prevent him from remaining focused for a one-step task, it would be difficult for Plaintiff to "work in a competitive environment."[54]

At the conclusion of the hearing, Plaintiff's attorney requested that Plaintiff's prior application for Social Security benefits be reopened.[55] He also requested a neuropsychological evaluation of Plaintiff.[56] The ALJ temporarily denied the requests, but agreed to consider them as he studied the case in further detail.[57]

The ALJ returned a decision on August 22, 2006, finding that Plaintiff met the requirements for insured status on the alleged date of disability through March 31, 2006, and that Plaintiff had

---

[52]   Id. at 443.

[53]   See id. at 442.

[54]   Id. at 443-44.

[55]   After Plaintiff's operation in 1990, he received Social Security disability benefits for fifteen years. Id. Plaintiff was taken off of Social Security on April 1, 2004, and received his last check on June 30, 2004. Id. at 435.

[56]   Id. at 444.

[57]   Id. at 444-45.

not engaged in substantial gainful activity during the relevant time period.[58]   The ALJ found that Plaintiff had the following severe impairments: seizure disorder, degenerative arthritis, and lumbar strain.[59]   However, none of these met any of the Social Security Administration's listed impairments.[60]   The ALJ determined that Plaintiff had the residual functional capacity for light work: "to lift and/or carry 20 pounds occasionally and 10 pounds frequently (including upward pulling), stand and/or walk (with normal breaks) about 6 hours in an 8-hour workday, sit (with normal breaks) about 6 hours in an 8-hour workday, and push and/or pull (including operation of hand and/or foot controls) without limitation."[61]   He also noted certain seizure precautions, such as no climbing ladders, no driving, no exposure to heights or dangerous tools, and no moving machinery.[62]   Plaintiff was found capable of performing his past relevant work as a sales attendant, a position that the vocational expert described as light and unskilled.[63]

In reaching his decision, the ALJ considered opinion evidence

---

[58]   Id. at 15.

[59]   Id.

[60]   Id.

[61]   Id. at 15–16.

[62]   Id. at 16.

[63]   Id. at 17.

and all of Plaintiff's symptoms.[64]  He noted Plaintiff's claim that the pain limited his ability to stand, walk, lift and carry heavy objects, as well as Plaintiff's statement that he walked for exercise and read and watched television.[65]  The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [Plaintiff's] statements concerning the intensity, duration and limiting effects of these symptoms [were] not entirely credible."[66]

While considering Plaintiff's assertion that he was unable to work due to arthritis, the ALJ noted that Plaintiff's physical examinations in the recent past have been normal and the record contains "no evidence of significant arthritis."[67]  He reported that only a small percentage of epileptics (under appropriate treatment) are precluded from engaging in substantial gainful activity.[68]  The ALJ opined that the failure of Plaintiff's seizures to be under good control was due to Plaintiff's noncompliance with prescribed treatment.  The ALJ also recognized Plaintiff's obesity, but found that the evidence "demonstrate[d] no problems related to his

---

[64]  Id. at 16.

[65]  Id.

[66]  Id.

[67]  Id. at 17.

[68]  Id.

weight."[69]

Ultimately, the ALJ determined that Plaintiff was not under a "disability" as defined by the Social Security Act.[70] See 20 C.F.R. §§ 404.1520(f), 416.920(f).

In a decision dated January 26, 2007, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner.[71] Consequently, Plaintiff filed this action on April 20, 2007.[72]

## II.  Standard of Review and Applicable Law

The court's review of a final decision by the Commissioner denying disability benefits is limited to the determination of whether: 1) substantial evidence in the record supports the decision; and 2) the ALJ applied proper legal standards in evaluating the evidence. Waters v. Barnhart, 276 F.3d 716, 718 (5th Cir. 2002); Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999).

## A.  Substantial Evidence

The widely accepted definition of "substantial evidence" is "that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." Carey v. Apfel, 230

---

[69]     Id.

[70]     Id.

[71]     Id. at 5.

[72]     See Plaintiff's Original Complaint, Docket Entry No. 1, p. 1.

12

F.3d 131, 135 (5th Cir. 2000).   It is "something more than a scintilla but less than a preponderance." <u>Id.</u>  The Commissioner has the responsibility of deciding any conflict in the evidence. <u>Id.</u>  If the findings of fact contained in the Commissioner's decision are supported by substantial record evidence, they are conclusive, and this court must affirm.   42 U.S.C. § 405(g); <u>Selders v. Sullivan</u>, 914 F.2d 614, 617 (5th Cir. 1990).

Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it.  <u>Johnson v. Bowen</u>, 864 F.2d 340, 343-44 (5th Cir. 1988).   In applying this standard, the court is to review the entire record, but the court may not weigh the evidence, decide the issues de novo, or substitute the court's judgment for the Commissioner's judgment. <u>Brown</u>, 192 F.3d at 496.   In other words, the court is to defer to the decision of the Commissioner as much as is possible without making its review meaningless.   <u>Id.</u>

**B.   <u>Legal Standard</u>**

In order to obtain disability benefits, a claimant bears the ultimate burden of proving she is disabled within the meaning of the Social Security Act. <u>Wren v. Sullivan</u>, 925 F.2d 123, 125 (5th Cir. 1991).   Under the applicable legal standard, a claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a

continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(a); see also Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).  The existence of such a disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings.  42 U.S.C. §§ 423(d)(3), (d)(5)(A); see also Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment;" (3) a claimant whose impairment meets or is equivalent to an impairment listed in [the Listings] will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled;" and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994); see also 20 C.F.R. § 404.1520.  By judicial practice, the claimant bears the burden of proof on the first four of the above steps, while the Commissioner bears it on the fifth.  Crowley v. Apfel, 197 F.3d 194, 198 (5th Cir. 1999); Brown, 192 F.3d at 498.  The Commissioner can satisfy her burden either by reliance upon the Medical-Vocational Guidelines of the Regulations, expert vocational testimony, or other similar evidence.  Fraga v. Bowen, 810 F.2d

1296, 1304 (5th Cir. 1987).  If the Commissioner satisfies her step-five burden of proof, the burden shifts back to the claimant to prove she cannot perform the work suggested.  Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).  The analysis stops at any point in the process upon a finding that the claimant is disabled or not disabled.  Greenspan, 38 F.3d at 236.

### III.  Analysis

Plaintiff contends that summary judgment is appropriate in his favor because the record does not contain substantial evidence to support the ALJ's finding that Plaintiff retained the ability to perform his past relevant work and, thus, was not disabled.[73] Plaintiff asserts that the ALJ failed to properly develop the record and consider all of Plaintiff's impairments.  Specifically, Plaintiff asserts that the ALJ failed to: (1) properly evaluate Mr. Baines's testimony; (2) mention or properly consider Plaintiff's brain tumor and craniotomy; (3) provide the requisite explanation for his conclusion that Plaintiff's obesity did not create any limitations; and (4) recognize record evidence of Plaintiff's significant arthritis and abnormal physical examinations.  Finally, Plaintiff argues that the ALJ erred in finding that Plaintiff could perform his past relevant work as a sales attendant by not considering the actual requirements and performance of Plaintiff's job.

---

[73]    Plaintiff's Motion for Summary Judgment, Docket Entry No. 20, p. 8-15.

Defendant maintains that summary judgment should be granted in his favor because substantial evidence supports the ALJ's decision.[74]   Defendant offers numerous arguments in support, including: (1) a lack of objective corroboration for Plaintiff's symptoms and alleged inability to work; (2) the ALJ's consideration of all record evidence, including Plaintiff's seizures, in making his decision; (3) first-hand evidence in the record to support the ALJ's decision; and (4) the ALJ's proper consideration of Plaintiff's job duties based upon Plaintiff's own testimony and the testimony of the vocational expert.

## A.    **Mr. Baines's Testimony**

Plaintiff contends that the ALJ improperly disregarded Mr. Baines's testimony regarding the residual effects of Plaintiff's craniotomy because the ALJ failed to mention the testimony or describe the reason for his credibility finding.   Plaintiff asserts that Mr. Baines's testimony is supported by both objective medical testing and the fact that, since 2004, Plaintiff has not held a job longer than three months.

The ALJ is entitled to weigh and judge witness credibility. Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985).   This entitlement also includes the power to disregard testimony.   See Greenspan, 38 F.3d at 238.   A district court must uphold a

---

[74]    See Defendant's Memorandum in Support of Cross Motion for Summary Judgment, Docket Entry No. 14, p. 1; Defendant's Response to Plaintiff's Motion for Summary Judgment, Docket Entry No. 21, p. 1.

credibility determination if it is supported by substantial evidence.  Id.

Mr. Baines, a close and long-time friend of Plaintiff, testified at the administrative hearing that, following Plaintiff's brain surgery, Plaintiff had difficulty concentrating, multi-tasking, and became short-tempered.  Mr. Baines also testified that Plaintiff can properly follow directions, is generally jovial, and gets along well with others.

The court finds it significant that Plaintiff himself testified that he is not short-tempered beyond a "normal amount."[75] Plaintiff testified that it was arthritis and the corresponding pain that inhibited him from working.  He said he would have kept his job as a teacher's aide if it had not been for a seizure. Plaintiff did not testify to any of the "residual effects" of his the surgery to which Mr. Baines testified.

Plaintiff asserts that objective medical testing supports Mr. Barnes's testimony.  He points to MRIs and an EEG revealing "abnormal results."  However, a closer look at these tests reveals that the abnormalities were described as both stable and unchanged, and, in one case, unchanged since 1997.  The abnormal EEG was noted as being of the nature of those seen in patients who have had brain surgery.

Regarding the contents of the ALJ's decision, no "aspect of

---

[75]    Tr. 433.

fairness or accuracy" has been disrupted by the absence of a detailed description of the ALJ's reasons for finding Mr. Baines's testimony unpersuasive.  See Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994) (finding that an ALJ's failure to follow formulistic rules in explaining the reasons for rejecting a claimant's complaints of pain did not compromise the fairness or accuracy that the process was designed to ensure).  The ALJ stated that all symptoms and opinion evidence were considered in his decision.

Here, substantial evidence supports the ALJ's determination regarding the weight and credibility of Mr. Baines's testimony. The ALJ has the right to determine witness credibility and the court sees no error in the ALJ's decision to afford little or no weight to Mr. Baines's testimony.

**B.    Brain Tumor and Craniotomy Considerations**

Plaintiff contends that the ALJ did not fulfill his duty to fully develop the record regarding Plaintiff's brain tumor and craniotomy and the residual effects thereof.  Plaintiff asserts that the ALJ erred in denying Plaintiff's request for a neuropsychological consultative examination.  Defendant maintains that, although the ALJ had the authority to call a medical expert at an administrative hearing, he was under no obligation to do so. Defendant asserts that objective medical and non-medical evidence was sufficient to support the ALJ's decision.

Plaintiff's brain tumor, craniotomy, and seizures were the

18

subject of his prior application for disability benefits.[76]   The current application asserts a disability resulting from severe arthritis and Plaintiff testified that said arthritis is the primary reason he is not working.   Even though Plaintiff's brain tumor, craniotomy, and seizure disorder were not the focus of the benefits application at issue here, the ALJ still considered Plaintiff's seizures in making his decision.   He discussed Plaintiff's seizure disorder and how it was successfully treated with Depakote for ten years.   He discussed how claimant was seizure-free until he stopped taking Depakote.   The ALJ discussed how only a small percentage of epileptics (under proper treatment) are precluded from participating in substantially gainful activity and how, in situations where the seizures are not under control, it is usually due to a person's noncompliance with prescribed treatment.

Regardless of whether the ALJ was even required to do so, he considered Plaintiff's seizure disorder in making his determination.   Substantial evidence exists to support the ALJ's decision and the court is not prepared to overturn it on this basis.

The Fifth Circuit imposes a duty on the ALJ to fully and fairly develop the facts relating to Plaintiff's claim for

---

[76]      The Supreme Court has stated that the Social Security Act does not authorize judicial review of alleged abuses of discretion for refusal to reopen a prior claim for benefits.  See Califano v. Sanders, 430 U.S. 99, 107-08 (1977).

disability benefits.  <u>Newton v. Apfel</u>, 209 F.3d 448, 458 (5th Cir.
2000).  In some cases, a consultative examination may be ordered to
develop a full and fair record; however, such an examination is not
required unless "the record establishes that such an examination is
*necessary* to enable the administrative law judge to make the
disability decision." <u>Pearson v. Bowen</u>, 866 F.2d 809, 812 (5th Cir.
1989) (quoting <u>Turner v. Califano</u>, 563 F.2d 669, 671 (5th Cir.
1977)).   It is within the ALJ's discretion to require a
consultative examination, <u>id.</u>, and reversal of the ALJ's
determination is appropriate only if Plaintiff can show prejudice
from the ALJ's failure to request additional evidence.  <u>Newton</u>, 209
F.3d at 458.   Prejudice can be established by "showing that
additional evidence would have been produced if the ALJ had fully
developed the record, and that the additional evidence might have
led to a different decision."  <u>Id.</u>

     The court finds that the ALJ did not abuse his discretion in
denying Plaintiff's request for a consultative examination.  There
is no indication in the record that the ALJ faced an incomplete
medical history.  Plaintiff argues that the record raises a "strong
suspicion of mental impairment," but the court is not convinced.
The record contains a great deal of evidence regarding Plaintiff's
seizures.  In fact, the record contains evidence of more hospital
visits for seizures than Plaintiff even alleges occurred.
Plaintiff's seizures were controlled for years, and it was only

after Plaintiff removed himself from his prescribed medication that he began having them again.[77]   Moreover, the focus of Plaintiff's application for Social Security benefits was his alleged pain due to arthritis, not a mental impairment.   The record does not show that a neuropsychological examination was necessary in order for the ALJ to make his decision, and Plaintiff has not shown any resulting prejudice.

## C.   <u>Obesity Considerations</u>

Plaintiff next contends that the ALJ erred by failing to properly assess Plaintiff's obesity as a disabling factor under Soc. Sec. Ruling ("SSR") 02-01p.   Plaintiff argues that the ALJ's opinion is flawed because he did not explain how he reached his conclusion that Plaintiff's obesity did not cause any problems. The court disagrees.

Here, the ALJ acknowledged Plaintiff's obesity and stated that evidence in the record demonstrated no problem related to his weight.[78]   This finding satisfied the portion of SSR 02-01p that requires the ALJ to consider obesity in determining whether a claimant has a medically determinable impairment that is severe. <u>See</u> SSR 02-01p, 2002 SSR LEXIS 1.

---

[77]     In <u>Griego v. Sullivan</u>, the Fifth Circuit instructed that it was "within the discretion of the ALJ to discount [Plaintiff's] complaints of pain based on the medical reports combined with [Plaintiff's] daily activities and [Plaintiff's] decision to forego certain medications."  940 F.2d 942, 945 (5th Cir. 1991) ("While exclusive reliance on daily activities or a decision to forego a particular medication might concern us, we find no error in the consideration of these factors in conjunction with the medical reports.").

[78]     Tr. 17.

In addition, substantial evidence supports the ALJ's decision. The court cannot find, and Plaintiff does not point to, any evidence in the record that indicates that Plaintiff's obesity caused any limitations.  With the exception of giving his weight, stating that doctors told him to lose weight, and indicating that he had tried a number of diets, Plaintiff did not otherwise mention or reference his obesity during the administrative hearing.[79]

Considering the foregoing, Plaintiff clearly did not carry his burden to produce evidence that his weight resulted in any impairment or limitation beyond those considered by the ALJ. Therefore, the court finds that the ALJ properly considered Plaintiff's weight in rendering his decision, even if the decision did not describe in detail how the ALJ reached his conclusion. Plaintiff gave the ALJ no reason to consider additional weight-related, functional limitations when making his determination.

**D.   Evidence of Arthritis**

Plaintiff also asserts that objective medical evidence supports Plaintiff's complaints of severe arthritis.  Plaintiff points to the following evidence: a June 2004 diagnosis of severe arthritis in the lower thoracic spine, edema in Plaintiff's ankle, a physician's opinion that Plaintiff's hip and knee pain is likely due to bursitis, and a state agency physician's opinion regarding

---

[79]   See id. at 439.  Likewise, Plaintiff did not list "obesity" or otherwise reference limitations directly attributable to his weight on either his initial Disability Report or his Disability Report on Appeal.  See id. at 77, 87.

limitations on Plaintiff's ability to occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs.[80]

In making a disability determination, the ALJ is required to consider subjective evidence of pain, such as Plaintiff's complaints;[81] however, the ALJ has the ultimate discretion and responsibility for assessing the credibility of such subjective evidence. See Vaughan v. Shalala, 58 F.3d 129, 131 (5th Cir. 1995); Wren, 925 F.2d at 128. The ALJ is permitted to examine objective medical evidence and may find that an applicant's complaints of pain are inconsistent with said medical evidence and, accordingly, are not to be credited. See Vaughan, 58 F.3d at 131; Johnson v. Heckler, 767 F.2d 180, 182 (5th Cir. 1985). The ALJ's evaluation of Plaintiff's subjective complaints is entitled to judicial deference if it is supported by substantial record evidence. Villa v. Sullivan, 895 F.2d 1019, 1024 (5th Cir. 1990). The court is not at liberty to re-weigh the evidence or overrule the ALJ's decision as to credibility. See id.; Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001).

---

[80] Plaintiff argues that the ALJ did not properly consider the medical opinions of state agency physicians. The court agrees with Defendant in that the ALJ is "not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists." 20 C.F.R. § 404.1527(f)(2)(i). The ALJ must consider state agency findings, but is not controlled by said findings. See id. Moreover, the ALJ decision in this case states that all opinion evidence was considered in accordance with requirements and specifically recognizes a number of Plaintiff's physical limitations. Tr. 15-16.

[81] Additionally, the Fifth Circuit has previously held that it was permissible for an ALJ to consider a claimant's ability to perform household chores when evaluating the credibility of his complaints. See Vaughan v. Shalala, 58 F.3d 129, 131 (5th Cir. 1995).

Here, the ALJ noted Plaintiff's assertion that "pain limits his ability to stand, walk, and lift and carry heavy objects."[82] He also noted Plaintiff's ability to walk for exercise and sit to read and watch television.[83] The decision highlighted assessments from Plaintiff's treating physicians that showed normal physical examinations from 2001 to 2004 and, with the exception of an earache, another normal physical examination in December of 2005.[84] Furthermore, the court notes that, following one doctor's diagnosis of "severe arthritis" in June of 2004, two different physicians (in December of 2004 and January of 2005) explicitly opined that Plaintiff's diagnosis and allegations related to his symptoms were not fully supported by medical evidence.[85]

Although it is possible that Plaintiff's ability to do certain types of work may be limited by some pain, the inability to work without some pain will not in and of itself render Plaintiff disabled. See Chambliss, 269 F.3d at 522; Richardson v. Bowen, 807 F.2d 444, 448 (5th Cir. 1987). The ALJ's determination that Plaintiff's "statements concerning the intensity, duration, and limiting effects of [his] symptoms are not entirely credible" is supported by substantial evidence and thus entitled to judicial

---

[82]   Tr. 16.

[83]   Id.

[84]   Id.

[85]   Id. at 223, 228, 231.

24

deference.

**E.    Past Relevant Work**

Lastly, Plaintiff contends that the ALJ erred by not considering Plaintiff's work as a sales attendant as it was actually performed, on a part-time basis.  He asserts that the ability to perform a job part-time is not sufficient to support the ALJ's finding that Plaintiff is not disabled.   In response, Defendant argues that work may be substantial even if a claimant works part-time; time spent at work is an important criteria to determine substantial gainful activity, but it is not dispositive.

"When making a finding that an applicant can return to his prior work, the ALJ must directly compare the applicant's remaining functional capacities with the physical and mental demands of his previous work." Latham v. Shalala, 36 F.3d 482, 484 (5th Cir. 1994) (citing 20 C.F.R. § 404.1520(e).  Finding that Plaintiff has the ability to engage in substantial gainful activity "requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time." Singletary v. Bowen, 798 F.2d 818, 822 (5th Cir. 1986); Watson v. Barnhart, 288 F.3d 212, 217 (5th Cir. 2002).  An ALJ's determination that a claimant is unable to continue working for a significant period of time must be supported by both claimant's personal history and medical evidence.  Id.

25

The vocational expert described Plaintiff's work as a sales attendant as light and unskilled and opined that an individual with Plaintiff's residual functional capacity could work as a sales attendant.[86]   The vocational expert also stated that a position as a sales attendant does not pose a danger for a person with a history of seizures.[87]   The ALJ determined that Plaintiff had the residual functional capacity for light work.[88]   The ALJ noted that Plaintiff's capacity for work included limitations on the duration (less than a full work day) for which Plaintiff could stand, walk, and sit.[89]   He ultimately concluded: "In comparing the claimant's residual functional capacity with the physical and mental demands of [his] work, the undersigned finds that the claimant is able to perform [the work] as actually performed."[90]

Plaintiff has provided no legal support for his argument that part-time work is insufficient to support a finding of no disability based on the ability to perform past relevant work.  The court finds no reason to disturb the ALJ's determination after considering all of the evidence in the record, including testimony of a vocational expert.

---

[86]   Id. at 17.

[87]   Id.

[88]   Id. at 15-16.

[89]   Id.

[90]   Id. at 17.

**F. Defendant's Motion for Summary Judgment**

Defendant asserts in his motion for summary judgment that the ALJ's decision should be affirmed because it properly determined Plaintiff is not under a disability.  Finding no prejudicing legal error in the ALJ's decision, the court should not disturb said decision if substantial record evidence supports the ALJ's finding that Plaintiff is capable of performing past relevant work.

The court is sympathetic to the difficulties faced by Plaintiff; however, the ALJ is given the task of weighing the evidence and deciding disputes.  See Chambliss, 269 F.3d at 522; Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991).  Because the court finds that the ALJ committed no legal error, and more than a scintilla of evidence exists in support of the ALJ's decision, that decision cannot be overturned.

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have ten days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings

27

and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk, either electronically or by mail to P.O. Box 61010, Houston, Texas, 77208.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk Street, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 13th day of February, 2008.

Nancy K. Johnson
United States Magistrate Judge